UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MICHAEL JASON HOMER, SR., ET AL.**<br>    **Plaintiffs** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-1210** |
| **DNOW L.P., ET AL.**<br>    **Defendants** | **SECTION: "E" (3)** |

### ORDER AND REASONS

Before the Court is Defendant DNOW, L.P.'s ("DNOW") motion for summary judgment.[1] The motion is unopposed.[2] For the reasons that follow, DNOW's motion for summary judgment is **GRANTED**.

### BACKGROUND

This is a personal-injury case. On January 8, 2016, Michael Jason Homer, Sr., and his wife, Liese Homer (collectively, "Plaintiffs"), filed suit in the 29th Judicial District Court for the Parish of St. Charles, State of Louisiana, against Defendants DNOW, L.P.; Sellstrom Manufacturing Company ("Sellstrom"); RTC Fall Protection, a subsidiary of Sellstrom; Capital Safety USA; and Hagemeyer N.A., Inc.[3] The action was removed to federal court on February 11, 2016, on the basis of diversity of citizenship.[4]

According to the state-court petition, at the time of the incident-in-question,[5] Plaintiff Michael Jason Homer, Jr. ("Homer" or "Plaintiff"), was employed by DOW Chemical as a Manufacture and Engineer Technologist.[6] The petition alleges that, on the

---

[1] R. Doc. 72.
[2] R. Doc. 88.
[3] R. Doc. 1-2 at 7–8.
[4] R. Doc. 1.
[5] The state-court petition, as filed in the Court's record, does not indicate the date on which the alleged incident took place, though it appears portions of the state-court filings were cut off when scanning them to be filed.
[6] R. Doc. 1-2 at 8.

day of the incident, temperatures were "cold enough to freeze water," which thereby caused DOW Chemical's water pipes to "freeze[]" and "bust[]" and several leaks to develop.[7] According to Homer, he was assigned the task of stopping the leaks by "closing the main valve," which was elevated "22 feet up into the pipe rack."[8] The petition states, "Following his advisor's instructions, [Homer] grabbed his safety harness manufactured by defendant, Capital Safety[,] and the harness lanyard manufactured by defendants Sellstrom and/or RTC[,] which were purchased by DOW Chemical through defendant, DNOW and/or Hagemeyer, and proceeded to take care of the busted line with another technician."[9]

As Homer reached the stairs, he untied the lanyard from his harness to retie it to the next location, and the non-retractable lanyard became wrapped around his left ankle, causing him fall 22 feet down to a concrete slab onto his back.[10]

The Plaintiffs brought claims against Sellstrom and RTC as the manufacturers of the lanyard and harness, and against Capital Safety as the purchaser of the lanyard and harness, and DNOW and Hagemeyer as the distributors of the lanyard and harness. Plaintiffs contend the Defendants never instructed or warned DOW Chemical or any of its employees that the subject harness was unsafe to use as it did not have a retractable lanyard creating an unsafe working condition.[11]

---

[7] R. Doc. 1-2 at 8.
[8] R. Doc. 1-2 at 8.
[9] R. Doc. 1-2 at 8.
[10] R. Doc. 1-2 at 9.
[11] R. Doc. 1-2 at 10–11. On June 30, 2016, the Court granted Sellstrom's motion to dismiss for lack of personal jurisdiction. R. Doc. 34. The Court denied Plaintiffs' motion for reconsideration on November 8, 2016. R. Doc. 39.

On March 20, 2017, DNOW filed a motion for summary judgment, arguing it was not the distributor of either the harness or the lanyard at issue in this case.[12] The Plaintiffs responded to DNOW's motion, and do not oppose dismissal of their claims against DNOW.[13]

## STANDARD OF LAW

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[14] "An issue is material if its resolution could affect the outcome of the action."[15] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[16] All reasonable inferences are drawn in favor of the nonmoving party.[17] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[18]

If the dispositive issue is one on which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[19] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving

---

[12] R. Doc. 72.
[13] R. Doc. 88.
[14] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[15] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[16] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[17] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[18] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[19] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).

party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[20]

If the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) affirmatively demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[21] When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled to summary judgment as a matter of law.[22] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[23] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[24] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue

---

[20] *Celotex*, 477 U.S. at 322–24 (Brennan, J., dissenting).
[21] *Id.* at 331–32.
[22] *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).
[23] *Celotex*, 477 U.S. at 332–33.
[24] *Id.*

4

for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[25] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[26]

"[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports the claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[27]

## LAW AND ANALYSIS

DNOW seeks summary judgment on the Plaintiffs' claims against it, arguing there exist no disputed issues of material fact and it is entitled to judgment as a matter of law because it was not the distributor of either the harness or lanyard at issue in this case.[28] Plaintiffs bring claims against DNOW under the Louisiana Products Liability Act ("LPLA"). The Plaintiffs do not allege DNOW is a manufacturer under the LPLA. Under Louisiana tort law, to establish the liability of a non-manufacturer seller of a product, a plaintiff must show: (1) the product sold by the seller was defective; (2) the seller had actual or constructive knowledge that the product it sold was defective and (3) the seller

---

[25] *Celotex*, 477 U.S. at 332–33, 333 n.3.
[26] *Id.*; *see also First National Bank of Arizona*, 391 U.S. at 289.
[27] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).
[28] R. Doc. 72-1.

failed to declare the defect.[29] Before reaching this analysis, however, the Plaintiffs must show DNOW was in fact a non-manufacturer seller or distributor of the lanyard or harness.

DNOW, as movant on summary judgment, bears the burden of submitting affirmative evidence that negates an essential element of the Plaintiffs' claim or demonstrating there is no evidence in the record to establish an essential element of the Plaintiffs' claim. DNOW contends the undisputed evidence shows it was neither seller of neither the harness nor the lanyard at issue. In support of its position, DNOW submits the sworn affidavit of Courtney E. Greenway, an employee of DNOW, which states "DNOW, L.P. is not the regular supplier of fall protection equipment to Dow Chemical" and "at no time between 2008 and 2015 did DNOW L.P. sell any Sellstrom Lanyards with [the] model number [of the Plaintiff's harness and lanyard] to Dow Chemical or Union Carbide."[30] DNOW also submits the deposition testimony of Jeanine Algate, the safety director at Dow Chemical Company, in which she testified Defendant Hagemeyer North America, Inc. is the usual supplier for all of the fall protection equipment and she is not aware of any distributors other than Hagemeyer who would have provided fall protection equipment to Dow.[31]

DNOW has provided sufficient affirmative evidence to negate the Plaintiffs' claims that it was the seller of the harness or lanyard. As a result, the burden shifts to the Plaintiffs to point to record evidence that creates a genuine dispute of material fact with respect to whether DNOW was, in fact, a non-manufacturer seller. The Plaintiffs have not attempted to do so, and concedes "DNOW, L.P. did not supply the harness and lanyard at

---

[29] *Ayala v. Enerco Grp.*, 569 Fed. App'x 241, 245 (5th Cir. 2014).
[30] R. Doc. 72-5.
[31] R. Doc. 72-7 at 29, 42; R. Doc. 72-8 78, 83–85.

issue in this case."[32] In fact, Plaintiffs "do not oppose the dismissal [of] their claims against DNOW L.P. with prejudice."[33]

DNOW has shown there exists no genuine dispute as to any material fact and it is entitled to judgment as a matter of law.

Accordingly,

## CONCLUSION

**IT IS ORDERED** that DNOW, L.P.'s motion for summary judgment is **GRANTED**, and the Plaintiffs' claims against DNOW, L.P. are hereby **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this 4th day of April, 2017.

                                    **SUSIE MORGAN**
                    **UNITED STATES DISTRICT JUDGE**

---

[32] R. Doc. 88 at 2.
[33] *Id.* at 3.